EQUITABLE TRUST CO. OF NEW YORK v. GREAT SHOSHONE & TWIN FALLS WATER POWER CO. et al. (PLUMER et al., Interveners).

AMERICAN WATERWORKS & ELECTRIC CO. v. TOWLE et al.

(Circuit Court of Appeals, Ninth Circuit.   October 22, 1917.)

No. 2791.

1. CORPORATIONS ⬅️482(3)—MORTGAGES—FORECLOSURE—INTERVENTION.
    Under Rev. Codes Idaho, § 3418, providing that the right of a mortgagee to foreclose, as well as the amount claimed to be due, may be contested in the District Court by any person interested in so doing, and section 4111, providing that any person may, before trial, intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties or an interest against both, where prior to a suit to foreclose a mortgage a receiver had been appointed in a creditors' suit, the court did not err in permitting a judgment creditor and general creditors whose claims had been presented and allowed in the receivership suit to intervene in the foreclosure suit and contest the validity of the mortgage so far as it covered personal property.

2. RECEIVERS ⬅️1—PURPOSE OF APPOINTMENT—PRESERVATION OF RIGHTS.
    In the absence of specific state statute or decisions of the state courts conferring special rights and powers, and where a receiver is not appointed for the purpose of impounding property for a specific purpose, the appointment of a receiver of property by a federal court is for the protection and preservation of all rights and interests therein existing at the time of such appointment.

3. CORPORATIONS ⬅️482(3)—MORTGAGES—FORECLOSURE—INTERVENTION.
    Where in a suit to foreclose corporate mortgages on real and personal property, a judgment creditor and creditors whose claims had been allowed in a receivership suit intervened and contested the validity of the mortgages so far as they covered personal property on the ground that they were not accompanied by an affidavit of good faith as required by statute and obtained a decree adjudging that certain personal property was not subject to the lien, and the property was sold as a whole and the amount not subject to the lien agreed upon, it was within the trial court's discretion whether another creditor who had not availed itself of the right to intervene and contest the mortgage should be allowed to intervene and set up claim which would have taken practically the whole of the fund not subject to the lien, and the refusal to permit it to intervene was not an abuse of such discretion.

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by the Equitable Trust Company of New York as trustee under deeds of trust by the Great Shoshone & Twin Falls Water Power Company against the Great Shoshone & Twin Falls Water Power Company and others, in which the American Waterworks & Electric Company sought to intervene and file an intervening complaint against Guy I. Towle and others. From the decree (228 Fed. 516), and from an order denying leave to intervene, plaintiff and the intervener appeal. Affirmed.

The Great Shoshone & Twin Falls Water Company was a public service corporation of the state of Idaho, engaged in generating and supplying electricity to various persons and various places in the southern portion of that state, and having a large amount of both real and personal property. It subsequently became insolvent, with a number of general creditors, and one, at least, secured one. One of its general creditors, Guy I. Towle, commenced a suit, in his own behalf and in behalf of such of the other creditors as might join therein, against the company in the court below on the 2d day of November, 1914, alleging, among other things, its insolvency, and that he was a creditor of the corporation, and asking for the appointment of a receiver of its property. The defendant immediately appeared, and by answer admitted the allegations of the bill, and joined in the request for a receiver, with the result that the court on the same day appointed William T. Wallace such receiver, and enjoined every one from attaching or levying upon or seizing any of the property of the company. Among the creditors of the power company was a corporation styled the American Waterworks & Electric Company, its claim being $1,268,434.66, or thereabouts.

Carl J. Hahn, as administrator of the estate of Harry M. King, deceased, was a judgment creditor of the insolvent corporation, and the Equitable Trust Company of New York was sole trustee under a deed of trust made by it May 1, 1910, and under supplemental mortgages dated June 21, 1911, and April 7, 1913, respectively, covering all of the real and personal property of the power company; and on the 14th day of April, 1915, that trustee commenced in the court below a suit to foreclose the deed of trust and the supplemental mortgages, alleged to have been given to secure an issue of bonds aggregating $2,230,000, making defendants to the foreclosure suit the mortgagor power company, William T. Wallace, as receiver of its property, Towle, the complainant in the receivership suit, and the judgment creditor Carl J. Hahn, as administrator of the estate of Harry M. King, deceased. A supplemental bill was subsequently filed by the trustee, praying, among other things: "That the court find and adjudge that the principal of the said bonds issued and outstanding, as alleged in the bill of complaint herein, in the amount of $2,230,000, is due and payable; * * * that an account be had and taken of the bonds, interest coupons, and interest secured by said deed of trust and supplemental mortgages, and the amount due thereon, with the names of the lawful holders or owners thereof, be ascertained; that an account be taken of all property of every kind conveyed or pledged by said deed of trust and supplemental mortgages, or intended so to be, whether acquired before or after the execution and delivery thereof; * * * that the defendant Great Shoshone & Twin Falls Power Company and William T. Wallace, as receiver of its property, may be decreed to pay, within a short time to be fixed by the court, to the holders of the bonds and coupons secured by said deed of trust and supplemental mortgages, or to your orator as trustee for said holders, the principal amount of said bonds and the defaulted interest thereon."

To the bill for the foreclosure Hahn, as administrator, filed an answer setting up the judgment obtained against the power company, and subsequently L. M. Plumer and E. B. Scull, as executors of the estate of L. L. McClelland, deceased, having filed their claim for allowance in the general creditors' suit, and having obtained the allowance and approval thereof, intervened by leave of the court in the foreclosure suit, and by answer to the bill of complaint therein attacked the validity of the trust deed and mortgages.

Similar steps were taken by one Jake M. Shank and the defendant Towle, and they also were permitted to intervene in the foreclosure suit and to file an answer therein assailing the validity of the trust deed and mortgages; the ground of each of the said attacks being, in substance, that in so far as the personal property was concerned the deed of trust and mortgages were void as against those creditors because of certain provisions of the statute of the state of Idaho, including section 3408 of its Revised Codes, which declares that "a mortgage of personal property is void as against creditors of the mortgagor * * * unless * * * it is accompanied by the affidavit of the mortgagor that it is made in good faith," etc.

Subsequently the complainant in the foreclosure suit moved to vacate each of the orders allowing the interventions to be filed and to dismiss each of the answers filed by the interveners, which motions were by the court denied. Thereupon the allegations in the answers of the interveners were by agreement of counsel deemed denied, and the cause came on for trial, the receiver Wallace having, by direction of the court, also filed an answer which, in addition to various admissions, alleged and denied as follows: "That at the time of the appointment of the receiver there was on hand a large and miscellaneous assortment of construction material such as poles, wire, cross-arms and insulators, transformers, and other material of like kind intended for construction purposes; that a portion of said material had been intended to be used for the construction of a line from Mountain Home to Boise, which line has been abandoned and the material therefor was on hand; that a portion of said material not needed by the defendant company or the receiver has been sold by said receiver to the Southern Idaho Water Power Company, and an accounting therefore has been made. That in addition to this, at the various offices of the company in Twin Falls, Oakley, Shoshone, Jerome, Glenns Ferry, Gooding, and Mountain Home, a stock of lamps, fans, small motors, heating devices, and other merchandise was kept on hand for the convenience of the customers, of the company and to supply them with appliances which they needed, these appliances being in the nature of appliances ordinarily carried in electric stores. * * * That defendant has no knowledge, information, or belief sufficient to enable him to answer as to whether or not said bonds were lawfully or properly sold or whether the purchasers thereof obtained any title thereto, and defendant therefore denies the same."

The prayer of the answer of the receiver was: "That the court first ascertain the amount actually due upon the obligations of the Great Shoshone & Twin Falls Water Company, defendant herein, and that only so much of the property of said company be sold as is covered by the liens described in the bill of complaint herein, and that the defendant be given all proper relief."

The record shows these further facts: That before the complainant closed its case an attorney for the court informed it that he had received a telegram from the president of the power company (who was also president of the American Waterworks & Electric Company), requesting him to file an answer in the case on behalf of the power company, admitting all of the allegations of the bill and supplemental bill, and that he had prepared such an answer which he asked leave to file, which application the court took under consideration, but subsequently denied. And, further, that the claims of Jak M. Shank in the sum of $4,390, Guy I. Towle in the sum of $13,963.01, and L. M. Plumer and E. B. Scull as executors in the sum of $15,625 had been allowed and approved as claims against the power company in the general creditors' suit, and that the deed of trust and supplemental mortgages were recorded in the mortgage records of the several counties as alleged in the bill of complaint, but were not recorded in the chattel mortgage records.

A certified copy of the unpaid judgment of Hahn, as administrator, against the power company was also introduced in evidence.

The trial court held and decreed that the lien created by the deed of trust and supplemental mortgages was subject and subordinate to the claims of the intervening creditors "as to all such articles of personalty as do not form a constituent part of and are not presently necessary for the maintenance, repair, and operation of the hydroelectric, generating, transmitting, and distributing systems of the power company or reasonably necessary in conducting its

business as a public service corporation, such personalty consisting of construction supplies and materials in excess of the present needs of the power company in conducting its business, and of bills and accounts receivable, stocks of merchandise which are intended for sale to the public in the ordinary course of retail business, the public ferry at Shoshone Falls, and stock owned by the power company in other corporations, which said claims have been approved and allowed in the respective amounts following, to wit:

| | |
|---|---|
| Guy I. Towle.............................................................$13,963 01 | |
| Carl J. Hahn, as administrator of the estate of Harry M. King, deceased ..................................................... | 6,225 15 |
| L. M. Plumer and E. B. Scull, executors of the estate of L. L. McClelland, deceased................................... | 15,625 00 |
| Jake M. Shank................................................... | 4,390 00 |

and there is due the said claimants respectively the sums aforesaid, with interest thereon at the rate of 7 per cent. per annum from the date hereof."

Thereupon this stipulation of the respective counsel was entered into: "It is hereby stipulated by and between the parties hereto, that in view of the decision of the court that the lien of complainant's mortgage is, as to certain personal property, subject and subordinate to the claims of certain of the defendants and the interveners, and in view of the further fact that it is to the interest of all parties to this suit and creditors of the Great Shoshone & Twin Falls Water Power Company that all the property, rights, and assets of said corporation be sold as an entirety and without delay, the decree in this cause shall provide for the sale of all of the property of the said defendant Great Shoshone & Twin Falls Power Company in block and as an entirety, but the sale of said premises shall not be construed as a waiver of the right of appeal of any party to this cause as to any matter relating to the distribution of the proceeds of sale, or as to any matter involved in the decision of the court rendered herein on the 17th day of November, 1915, but all objections that might be raised on an appeal from the decree herein may be raised with the same force and effect on an appeal taken after the sale of such property under said decree."

Subsequently, and before the making of the sale directed by the decree, this further stipulation was entered into: "It is hereby stipulated and agreed by and between the parties hereto, through their respective solicitors, that the personal property referred to in paragraph second and other paragraphs of the decree entered in this cause on December 6, 1915, consisting of construction supplies and materials in excess of the present needs of the power company in conducting its business, and of bills and accounts receivable, stocks of merchandise which are intended for sale to the public in the ordinary course of retail business, the public ferry at Shoshone Falls, and stock owned by the power company in other corporations, being the property upon which the interveners and certain of the defendants were adjudged to have claims prior and superior to the lien of complainant, is of the reasonable value of $45,000. It is further stipulated and agreed that in apportioning the proceeds derived from the sale of the property of the defendant power company under said decree, said sum of $45,000 shall be placed into what is in said decree sometimes called the 'Unsecured Creditors' Fund,' to be apportioned and distributed as in said decree provided, relative to the payment and distribution of such Unsecured Creditors' Fund. This stipulation is made to avoid the necessity of a hearing for the purpose of apportioning the proceeds of sale, as provided in paragraph 14 of said decree, and nothing herein contained shall be construed as a waiver of any right by any of the parties (to) except or object to or appeal from any of the provisions of said decree, or any order hereafter made based on said decree."

On January 8, 1916, all of the property of the power company was sold at public sale under the decree of foreclosure and bid in for the sum of $2,000,000, the upset price theretofore fixed by the court, and on the following February 14th the motion for confirmation of the sale came on for hearing, and it was on that day confirmed. Thereafter the American Waterworks & Electric Company presented to the court a complaint in intervention, which it asked

leave to file, to which were made defendants Guy I. Towle, Carl J. Hahn, as administrator of the estate of Harry M. King, deceased, defendants in said cause, and L. M. Plumer and E. B. Scull, administrators of the estate of L. L. McClelland, deceased, and Jake M. Shank interveners therein, the record reciting, "And the above and foregoing amended complaint, when presented to the court, on the 28th day of February, 1916, was unverified, and the court stated at the hearing that the amended complaint in intervention might be used in its unverified condition in the presentation of application for leave to intervene, with the understanding that the said amended complaint in intervention should be verified by the proper officers, and when so verified might be lodged as of date the 28th day of February, 1916. This permission to hear the application of the American Waterworks & Electric Company on its unverified complaint in intervention was granted to the American Waterworks & Electric Company for the reason that petitioners L. M. Plumer and E. B. Scull, executors of the estate of L. L. McClelland, deceased, Jake M. Shank, Guy I. Towle, and Carl J. Hahn, as administrator of the estate of Harry M. King, deceased, had noticed for hearing at 10 a. m. on the 28th day of February, 1916, their petition for an order upon the special master to pay the prior lien claims of these petitions, and counsel for the American Waterworks & Electric Company had asked leave of the court to present the application of the American Waterworks & Electric Company on the unverified complaint in intervention in order that the two matters might come before the court on the same morning." The application was by the court denied.

The appeals are by the trustee and the American Waterworks & Electric Company.

Murray, Prentice & Howland, of New York City, and Richards & Haga and J. L. Eberle, all of Boise, Idaho, for appellant Equitable Trust Co. of New York.

Wyman & Wyman, of Boise, Idaho, for appellant American Waterworks & Electric Co.

Martin & Cameron, of Boise, Idaho, for appellees Plumer and Scull.

Alfred A. Fraser, of Boise, Idaho, for appellee Jake M. Shank.

James H. Wise, of Twin Falls, Idaho, for appellee Hahn.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] We readily concede that none of the intervening creditors of the insolvent corporation had or acquired any lien on any of its personal property, but are unable to sustain the contention of the appellant that the court below erred in permitting the intervention of such of the general creditors who asked to intervene prior to the entry of the decree of the court. One of such creditors had obtained judgment against the insolvent, and the demands of the others of them had been presented and allowed as claims against the insolvent debtor. Section 3418 of the Revised Statutes of Idaho provides, with reference to mortgages upon property within the state, as follows:

"The right of the mortgagee to foreclose, as well as the amount claimed to be due, may be contested in the District Court by any person interested in so doing, for which purpose an injunction may issue if necessary."

And section 4111 of the same Code reads:

"Any person may, before the trial, intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both. An intervention takes place when a third

person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or·by demanding anything adversely to both the plaintiff and the defendant, and is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court, and served upon the parties to the action or proceeding who have not appeared and upon the attorneys of the parties who have appeared, who may answer or demur to it as if it were an original complaint."

While the Supreme Court of Idaho held in the case of Union Trust & Savings Bank v. Idaho Smelting &·Refining Co., 24 Idaho, 735, 135 Pac. 822, that the appellant there was not entitled to intervene in the foreclosure suit there involved, having failed to allege the insolvency of the corporation which executed the mortgage, or to show that the party claiming the right to intervene had prosecuted its claim to judgment, or had made any effort to collect the same from the debtor, or that an attempt to do so would have been useless, yet held that if the appellant had "first shown the existence of its claim, and that it had exhausted all of its legal remedies, or that those remedies were useless, and it would be vain to pursue them, and that the only way it could secure and collect its claim would be out of the property covered by this mortgage, then it would have been in a position to contest the validity of the mortgage and to raise the question as to whether or not" the bonds there involved had been issued and the mortgage had been executed in violation of the provisions of the Constitution of the state, citing section 4111 of the state statute, and declaring that:

"Any third party may intervene in an action in this state who has 'an interest in the matter in litigation, in the success of either of the parties, or an interest against both.' "

In the present case the interventions allowed by the court below met the requirements of the case just cited. The previous case in the same court of Neustadter Bros. v. Doust, 13 Idaho, 617, 92 Pac. 978, is wholly unlike the present one. There the action was against a sheriff to restrain and enjoin him from selling certain personal property described in the complaint under a chattel mortgage which had been previously executed by the copartnership of Lang & Wunderlich in favor of the Exchange National Bank of Cœur D'Alene City; and the question was as to the sufficiency of the complaint. It alleged, among other things, that Lang & Wunderlich executed to the bank their certain chattel mortgage, which was made a part of the complaint, and that:

"The said chattel mortgage, as to any of the creditors of said Lang & Wunderlich, was void from the beginning, and that as to the said creditors and any and all of them, the said chattel mortgage was and still is null and void and of no force and effect whatsoever or at all."

In holding the complaint insufficient, the court said:

"The plaintiff makes no attempt to show that Lang & Wunderlich had no other property out of which to pay their indebtedness. It contains no allegation of insolvency, nor does it allege any facts from which insolvency can be reasonably inferred. It does not state that the plaintiff has ever made any demand on Lang & Wunderlich for the payment of the debt due, nor does it show any steps taken toward the collection of the same. They are

not made parties defendant in the action against the sheriff, nor has the plaintiff reduced his claim to a judgment. He has commenced no action against Lang & Wunderlich, has never attached this or any property, and in no way connects his right, interest, or claim with the property that he seeks to restrain the sheriff from selling, and no assurance is given when he will prosecute his action or that he will ever obtain a judgment against them. It can make no difference to the plaintiff whether the sheriff sells this property or not, if Lang & Wunderlich pay the plaintiff. If they should have the means with which to pay their indebtedness to the plaintiff, or if they have other property, either merchandise or cash, then there can be no reasonable objection to their paying their other debtor, the Exchange National Bank."

We do not understand the case last cited to hold that under the provisions of the Idaho statute that has been cited a chattel mortgage, unaccompanied by the affidavit of good faith and not recorded as required by the state statute, is valid as against all creditors of the mortgagor, except such as have a lien upon the property; nor do we understand the case of Ryan v. Rogers, 14 Idaho, 309, 94 Pac. 427, or Martin v. Holloway, 16 Idaho, 513, 102 Pac. 3, 25 L. R. A. (N. S.) 110, cited by the appellants in support of the contention, to so hold. In the first of these cases what the court held was that where the mortgagor remains in possession of the chattels and with the knowledge and consent of the mortgagee and continues to sell and dispose of the same without applying the proceeds of the sale to the reduction of the mortgage debt, the existence of such facts, whether shown by the mortgage itself or by evidence aliunde, will invalidate the mortgage as against creditors and other interested third parties, and that although such mortgage be defective or invalid as to third parties, if the mortgagee take possession of the property covered by it prior to the acquiring of a claim thereto by attachment, execution, or other lien, the possession of the mortgagee will be protected and his security be held valid to the extent of his claim.

In the second of the cases last cited it was held that the mortgagor and mortgagee to a chattel mortgage may make an agreement, valid as between themselves, that the possession of the property mortgaged shall remain in the mortgagor, with power on his part to dispose of it and apply all or any part of the proceeds in payment of the mortgage indebtedness, and that section 3409 of the Revised Codes of Idaho recognizes the right of a mortgagor and mortgagee to such a mortgage to agree that the possession of the mortgaged property may remain in the mortgagor, or be transferred to the mortgagee, in which latter event such possession by the mortgagee is equivalent to the recording of the mortgage, and gives to the world the same notice that the recording of the mortgage would give.

In all that we see nothing inconsistent with the sections of the Idaho Statutes that we have above quoted, or with the decision of that court in the case of Union Trust & Savings Bank v. Idaho Smelting & Refining Co., supra, or with what we have above held.

[2] We quite agree with the learned counsel for the appellants that, in the absence of specific state statute or decisions of the state courts conferring special rights and powers, and where he is not appointed for the purpose of impounding it for a specific purpose, the appointment of a receiver of property by a federal court is for the protec-

tion and preservation of all rights and interests therein existing at the time of such appointment. Authorities to this effect are so numerous that we think it is unnecessary to cite them.

[3] The receiver in the present suit, therefore, held all of the personal property of the insolvent corporation, to which the trustee's liens did not apply, for the benefit of the complainant in the receivership suit and for such of the other general creditors of the insolvent debtor as should join therein. So far as appears all such general creditors did so join except the appellant American Waterworks & Electric Company, which company, while having actual notice of all the litigation in question, for some reason or reasons abstained from intervening during the progress of the trial. But after its conclusion and after the entry of the decree in the cause and the creation of a specific fund by stipulation of the respective parties to the suit, which was the agreed value of that portion of the personal property to which the court held the trustee's liens did not apply, and which was therefore subject to the payment of the claims of the general creditors who had intervened in the receivership suit, and after the sale of all the property covered by the deed of trust and supplemental mortgages the appellant American Waterworks & Electric Company presented to the court a petition to intervene, which petition was directed only against the general creditors of the insolvent debtor who had intervened in the foreclosure suit; alleged their respective claims and an allowance thereof in and by the decree of the court; that the amount realized from the personal property held by the court not to be covered by the trustee's liens was $45,000, and, among others, made these further allegations:

"That all of said claims and a large number of other claims aggregating upwards of $4,000,000, the exact amount thereof being to your intervener unknown, were filed with the receiver in said cause pursuant to the order of the court and the notice of the receiver requiring the filing of claims against the power company for allowance by the receiver and court, to the end that the same might be entitled to share in the equitable distribution of the assets of such receivership estate pursuant to law and the principles of equity governing the administration and distribution of assets of insolvent debtors by courts of equity in suits brought by one or more creditors in behalf of themselves and all other creditors of the insolvent debtor. * * * That in addition to said sum of $45,000 this intervener is informed and believes that there is approximately $25,000 in the hands of the receiver of said power company that may also be available for the payment of claims of general creditors, making in the aggregate approximately $70,000 available for the payment of claims aggregating upwards of $4,000,000; that the other property of said power company subject to complainant's deeds of trust and mortgages was sold for $2,000,000 by the special master under the decree of foreclosure, which amount was less, as this intervener is informed and believes and so alleges the fact to be, than is due the said plaintiff under said decree of foreclosure."

Notwithstanding the allegation in the complaint of intervention thus sought to be filed by the American Waterworks & Electric Company that there were a large number of other claims against the power company, none of those alleged other claimants at any time intervened or sought to intervene in the foreclosure suit, although the record shows that notice was mailed to each known creditor of the insolvent

company, and a like notice published once a week for four successive weeks in two designated newspapers by the receiver under the order of the court made May 4, 1915.

That the appellant American Waterworks & Electric Company had the same right to intervene in the foreclosure suit and set up its claim to that portion of the personal property upon which the trust deed and supplemental mortgages were not a lien as had any and every other creditor of the insolvent debtor is clear, and that it had full opportunity of so doing is equally apparent from what has already been said. But instead of availing itself of that right and opportunity, it allowed the contest to be carried on by and at the expense of those of the general creditors of the insolvent that have been named, resulting in the decree and funds that have been referred to. Not until after the suit in which it could have intervened had been ended by the final decree therein and the sale of the property thereunder did that company manifest any intention of intervening, and not until those creditors had made application to the court for the payment of their claims out of that fund, did the appellant American Waterworks & Electric Company appear with its verified complaint in intervention, claiming such an amount as would practically take the whole of the fund in question.

We think that the most favorable view that can be taken of the application of the Waterworks & Electric Company is that it was addressed to the sound discretion of the court below, and are of the opinion that such discretion was not abused by the denial of the application. In denying it the court, after referring to the laches of the petitioner, said, among other things:

"It appears from the record in the case that during the entire time of the pendency of the foreclosure suit all the bonds were held by the National Securities Corporation, and it now appears from the amended petition that there was some sort of an arrangement between that company and the petitioner for the purchase of this claim. In view of the record in the receivership and in this case, it is thought to be incumbent upon the petitioner, before it can ask the court to exercise a liberal discretion in its favor, fully and frankly to negative the proposition that it stood with the holders of the bonds in the attempt to defeat the interveners in procuring the relief, whereas now it seeks to appropriate to itself substantially all that they have succeeded in wresting from the bondholders, at their own expense and peril. But be that as it may, I have been unable to see any substantial ground on which the right of the petitioner to intervene may be predicated. When the matter was first presented to me upon the 14th of February I had the impression that while it would not be permitted to intervene to share pro rata in the decree, the intervention might be allowed for another purpose. To explain, there is a fund, the precise amount of which has not yet been determined, in the hands of the receiver in the creditors' suit, which presumably will ultimately be distributed to the unsecured creditors, including the interveners and the petitioner, and also the plaintiff trustee for such deficiency judgment as may be awarded to it after applying the proceeds of the sale to the liquidation of its claim. My thought was that by paying the $45,000 to the interveners the proceeds of the sale would be diminished by that amount, and therefore the deficiency judgment would be correspondingly increased, and the aggregate of the unsecured claims entitled to share in the receivership fund would be equally increased, and thus the petitioner would receive a smaller dividend than would have been distributed to it if the interveners had stayed out of this suit. It occurred to me that perhaps it could be properly held—although

that seemed extremely doubtful—that a duty rested especially upon Towle, the plaintiff in that action, and possibly upon other interveners, not to do anything even in another suit by which they would be benefited to the disadvantage of other creditors. But whether such was or was not their duty, upon reflection it now appears clear to me that the petitioner would not suffer the slightest prejudice even in this respect. Indeed it is practically conceded by counsel that the petitioner's position is precisely the same, and the share it will receive out of the funds in the hands of the receiver is precisely the same that it would have been had the interveners never come into the foreclosure suit. The aggregate of the claims to participate in the distribution of that fund will not be increased, because in so far as the deficiency judgment is increased the claims of these interveners will be diminished, so that the aggregate will remain precisely the same. Even if therefore it be assumed that for some reason not made clear the interveners owed the petitioner the duty to take no action which would prejudicially affect its distributive share in the receivership fund, it cannot invoke the principle of equitable estoppel here as a ground for intervening, because admittedly it has suffered and will suffer no injury. The interveners have done nothing against good conscience or to the prejudice of the petitioner in securing and appropriating to their own use the judgment in the foreclosure case. They were under no contractual obligations to the petitioner, and I am unable to perceive how it can be held that they have violated any duty or obligation in seeking payment of their claims out of a fund which in whole would have otherwise gone to the bondholders, and not at all to the unsecured creditors. The judgment is entirely the fruit of their diligence, in the exercise of which they took nothing from the petitioner. The petitioner had the same right as they to come into the suit, of the pendency of which it undoubtedly had knowledge. If it did not join hands with the plaintiff to defeat the interveners, still, having knowledge of the pendency of the foreclosure suit, and presumably being advised of its legal rights, it chose to remain silent and inactive, thus avoiding the expense and peril of litigation, until after these interveners have succeeded, and then, when they are about to receive the fruits of their diligence, it seeks to step in and seize the same. It intimates no reason why, though having knowledge that the plaintiff trustee was seeking to appropriate the entire assets of its debtor to the payment of the bonds, it never lifted a finger in resistance, or suggested that the receiver do so."

The decree and orders appealed from are affirmed.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes